# JOSHUA WATER CONTROL DISTRICT, et al. v DEPARTMENT OF NATURAL RESOURCES

## Case No. 84-3679

State of Florida, Division of Administrative Hearings

February 22, 1985

### APPEARANCES OF COUNSEL

**Terry E. Lewis, Cari L. Roth, Messer, Rhodes & Vickers,** for petitioners.

**Spiro T. Kypreos** for respondent.

### OPINION

ROBERT T. BENTON, II, Hearing Officer.

### *RECOMMENDED ORDER*

This matter came on for hearing in Tallahassee, Florida, before the Division of Administrative Hearings, by its duly designated Hearing Officer, Robert T. Benton, II, on November 7, 1984. By order entered November 1, 1984, this case was consolidated for hearing with Case No. 84-3451R, in which petitioners challenged respondent's interpreta-

tion of Rule 16C-50.03, Florida Administrative Code, as an invalid exercise of delegated legislative authority. By order of even date, petitioners' rule challenge has been dismissed.

After respondent granted petitioners' applications for disbursement of aquatic plant control trust fund moneys only in part, petitioners requested formal administrative proceedings as to the denials and the matter was referred to the Division of Administrative Hearings.

## ISSUE

Whether petitioners are entitled to additional grant moneys for 1984-1985 under respondent's aquatic plant control funding program?

## FINDINGS OF FACT

Petitioners are water control districts established by special acts of the legislature. Within their respective boundaries, they are authorized to build and operate surface water management systems; they have ad valorem taxing power for that purpose.

## JOSHUA

Joshua Water Control District (Joshua), established by Ch. 69-1010, Laws of Florida (1969), seeks $78,775 toward its projected weed control costs for 1984-1985 of $437,642. Joshua manages some 800 miles of waterways traversing 25,000 acres of mostly agricultural land upstream from Arcadia in DeSoto County. Only two houses stand among the citrus groves within Joshua's boundaries. Joshua's main, lateral and sublateral canals comprise surface waters aggregating 3,300 acres. The canals drain into Prairie Creek which flows into the Peace River. During drought conditions, which typically obtain during a tenth of the year, water is pumped into the smaller canals for irrigation purposes. Excess capacity in Joshua's canals is available in case of flooding upstream. Outflow can be staged to lessen hazards to life and property downstream.

Aquatic weeks hamper the flow of waters within Joshua's canals. A 1982 survey put Joshua's cattail population at eighth largest in the state, and ranked the large size of Joshua's southern naiad and alligator weed populations as still more unusual. A 1984 survey revealed heavy infestations of hydrilla, torpedo grass and ludwigia peruviana.

## COUNTY LINE

County Line Drainage District (County Line), established by Ch. 67-723, Laws of Florida, covers 3,800 acres east of Fort Myers in northeast Lee County, including 500 acres of surface water lying in a

**153**

hundred miles of canals. The canals drain into Spanish Creek which flows into the Caloosahatchee. Citrus cultivation is the use to which nearly all of the 237 landowners put their property. A 1984 survey reflected moderate infestations of southern naiad and typha. County Line proposed to spend $136,373 in 1984-1985 implementing a workplan for controlling aquatic weeds. About twelve percent of County Line's canals are interconnected. The community of Alva abuts County Line's southern border.

## EAST CHARLOTTE

East Charlotte Drainage District (East Charlotte), established by Ch. 65-664, Laws of Florida (1965), lies in Charlotte County east and upstream of Punta Gorda. Seventy-five landowners hold the 3,300 acres within East Charlotte, 725 of which are ordinarily covered by water moving within East Charlotte's 100 miles of canals. The canals drain into Shell Creek which flows into the Peace River. East Charlotte proposed to fund its 1984-1985 weed control workplan at $79,043, about seven percent of which pertains to perimeter canals.

## DNR'S COMPUTATIONS

On receipt of petitioners' applications, DNR estimated what percentage of their workplans related to perimeter canals, reduced the workplan accordingly, then offered grants amounting to 18 percent of the portions of workplans deemed eligible. DNR applied the 18 percent factor uniformly in the cases of all 69 applicants for 1984-1985 grants. Joshua's $347,642 workplan, for example, was reduced to six percent, or $26,272, to reflect the portion relating to perimeter canals, then multiplied by .18, yielding $4,729, instead of the $78,775 Joshua seeks.

## STIPULATION

The parties stipulated to most of the allegations of the petition, including the following:

a. Petitioners are water control districts created by special acts of the Legislature and operating under the authority of Chapter 298, Florida Statutes. As such, Petitioners are political subdivisions of the State of Florida vested by statute with the authority to tax and spend for water control purposes.

b. Pursuant to the mandates of Chapter 298, Florida Statutes and special acts of the Legislature, Petitioners have constructed a series of canals, ditches and water control structures within their respective jurisdictions for purposes of flood control, drainage and irrigation. Joshua provides these services to . . . landowners within the approx-

imately 25,000 acres of land within its jurisdiction; East Charlotte contains approximately 3,000 acres . . . County Line contains approximately 3,600 acres of land . . . The primary use of the lands within the Districts is agricultural, particularly citrus production.

c. In performance of their statutory duties to operate and maintain the works of the Districts, Petitioners control the growth of aquatic weeds in the water bodies comprising the works of their Districts.

d. Respondent, Department of Natural Resources (DNR) administers the State Aquatic Plant Control Trust Fund. The Trust Fund is established in part, to provide financial assistance to special districts such as Petitioners, and other local governmental authorities charged with the responsibility of controlling aquatic plants.

e. DNR distributes funds to eligible applicants in accord with Rule 16C-50.03, Florida Administrative Code. The DNR Rule states:

Waters Eligible for State Aquatic Plant Control Funds.

Only waters which are accessible to the general public or which are managed for flood prevention for public benefit by applicants, shall be eligible for state aquatic plant control funds as provided in Section 372.925(5), Florida Statutes. Eligible waters shall be permanent bodies of water, except in drought conditions, and shall not include intermittent water drainage ditches. Eligible "ditchbank" areas shall be those areas within five (5) feet of the water's edge at the time of treatment.

f. Per DNR Rule 16C-50.05, Florida Administrative Code, Petitioners submitted timely applications and workplans to DNR for participation in the State Aquatic Plant Control Funding Program. Each Petitioner's application included a workplan encompassing all water bodies in the District—approximately 3,300 acres of waters within Joshua, 500 acres of waters within East Charlotte, and 725 acres of waters within County Line. The estimated total costs for performance of the workplans were as follows:

| | |
|---|---|
| Joshua — | $437,642.00 |
| County Line — | $136,373.00 |
| East Charlotte — | $ 70,043.00 |

g. Petitioners were notified by DNR that only a minor portion of the workplans, (essentially the perimeter canals of each District) were eligible for the Aquatic Plant Control Trust Fund.

h. Based on the DNR staff recommendation to the Governor and the Cabinet to disburse fiscal year 1984-1985 allocations from the

Aquatic Plant Control Trust Fund, the following budget amounts and percentages of Petitioners' workplans were determined eligible for the Aquatic Plant Control Funding Program:

Joshua — $26,272, Six Percent of the original workplan.

East Charlotte — $5,788, Seven Percent of the original workplan.

County Line — $15,489, Twelve Percent of the original workplan.

i. . . . The grants are calculated as a percentage of the cost of carrying out aquatic plant control within eligible areas of an applicant's jurisdiction. The percentage is the same for all eligible applicants. In the request to the Governor and Cabinet to disburse fiscal year 1984-85 allocations, DNR staff recommended the state match 18% of the requested eligible budgets for all participants in the Aquatic Plant Control Funding Program. Due to DNR's determination of the limited eligibility of Petitioners' workplans and budgets, the amounts allocated to each Petitioner are only a minute percentage of the budget included in Petitioners' applications. Those proposed allocations are:

Joshua — 18% $\times$ 426,272 = $4,729.00; Slightly more than one percent of the funds required to perform the entire workplan.

County Line — 18% $\times$ $15,489 = $2,788; 2.2 percent of the funds required to perform the entire workplan.

East charlotte — 18% $\times$ $5,788 = $1,042.00; 1.3 percent of the funds required to perform the entire workplan.

j. If Petitioners' applications had been granted as submitted, Petitioners' alloca- tions at 18% of the entire submitted budget would be:

Joshua — $78,775

County Line — $23,467

East Charlotte — $14,227.

Several hundred thousand dollars remain in the aquatic plant control trust fund. The entire canal systems, not just the perimeter canals, are available to prevent or control flooding downstream. There was no dispute as to petitioners' ability to match the state funds they sought nor any disapproval by DNR of the control techniques to be used. The DNR predicates its proposed denial on the view that "flood prevention for public benefit" contemplates direct benefits to people and does not include benefits to agriculture.

The parties filed proposed recommended orders. Proposed findings of fact have been adopted unless cumulative, subordinate, immaterial, unnecessary or unsupported by the weight of the evidence.

## CONCLUSIONS OF LAW

Like license applicants, petitioners here have the burden to show entitlement under applicable rules and statutes. Petitioners stand in the same posture as applicants for low income energy assistance, who also have the burden to show entitlement. On any factual dispute pertinent to a legitimate criterion, the applicant bears the burden of proof, by a preponderance of the evidence.

DNR has relied on Rule 16C-50.03, Florida Administrative Code, in declaring petitioners' week control activities ineligible for subsidies, since the rule was amended in 1982. DNR's original decision was that none of petitioners' programs constituted "flood prevention for public benefit." In this case, DNR has taken the position that petitioners' perimeter canals are used to prevent floods for public benefit while, according to DNR, the interior canals are not so used.

DNR's proposed action proceeds on the assumptions that only petitioners' perimeter canals have a flood control function that can confer benefits off-site, and that on-site benefits are immaterial. Since Rule 16C-50.03, Florida Administrative Code, codifies neither of these assumptions, it is incumbent on DNR "to properly establish such non-rule policy." *Florida Medical Center v. Department of Health and Rehabilitative Services*, No. AX-20 (Fla. 1st DCA; Jan. 24, 1985) at 2, if it can. The existence of a rule is no bar to development of non-rule policy on matters not covered by the rule, *Home Health Professional Services, Inc. v. Department of Health and Rehabilitatve Services*, No. AY-468 (Fla. 1st DCA; Jan. 11, 1985), 10 FLW 159, but no agency is free to act inconsistently with its own rules. Section 120.68, Florida Statutes (1984 Supp.).

Petitioners operate their respective systems in order to facilitate the cultivation of citrus trees, and their ability to provide flood control downstream is incidental to their principal purpose. Within their boundaries petitioners provide drainage part of the year and irrigation in the dry season. Irrigation occurs for about one tenth of the year. How much of the year the canals were used for flood control was not shown. The inference to be drawn from DNR's treatment of the perimeter canals and other applicants is that availability for "flood prevention" at any time makes a canal eligible, if the flood prevention is for "public benefit." On this, there is no apparent dispute.

DNR's non-rule policy interpreting the pertinent language in Rule 16C-50.03, Florida Administrative Code, must be consonant with the language of the rule, "waters . . . managed for flood prevention for public benefit," and have a basis in the evidence. While the statute

**157**

differentiates between "protect[ing] human health, safety and recreation" and "prevent[ing] injury to plant and animal life and property," Section 369.20(2), Florida Statutes (1983), the rule does not. It would have been a simple matter for the draftsman to specify "human health, safety and recreation," if the rule had intended to choose one of the two statutory objectives, to the exclusion of the other. Instead, the rule uses the all-inclusive "for public benefit." The rule seems to eschew any distinction between statutory objectives.

DNR proposes to deny petitioners' applications insofar as they relate to flood prevention on agricultural lands. To the extent DNR proposes to rely on a criterion not dictated by rule or statute, DNR must articulate, explicate, defend and support its non-rule policy. *Florida Medical Center v. Department of Health and Rehabilitative Services,* No. AX-20 (Fla. 1st DCA; Jan. 24, 1985); *McDonald v. Department of Banking and Finance,* 346 So.2d 569 (Fla. 1st DCA 1977). Underlying DNR's position is the view that the prevention of flooding of agricultural lands confers no public benefit. DNR did not establish an evidentiary basis for taking this approach. Nothing in the record explains why protecting citrus trees belonging to hundreds of citizens does not confer "public benefit," presumably on consumers as well as on purveyors of citrus fruit.

Assuming *arguendo* that Section 369.20, Florida Statutes (1983), authorized DNR to create priorities among water management districts, DNR failed to do so in adopting Rule 16C-50.03, Florida Administrative Code, and failed to prove a basis for doing so at hearing. There is no record foundation for DNR's proposed, partial denial of petitioners' applications, nor does any rule or statute require denial.

## RECOMMENDATION

It is, accordingly,

RECOMMENDED;

That DNR disburse from the State Aquatic Plant Control Fund seventy-eight thousand seven hundred seventy-five dollars ($78,775) to Joshua; twenty-three thousand four hundred sixty-seven dollars ($23,467) to County Line; and fourteen thousand two hundred twenty-seven ($14,227) to East Charlotte.

## FINAL ORDER

This matter came before the Governor and Cabinet, as agency head, on May 21, 1985. Post-hearing pleadings and memoranda submitted by

the parties have been fully considered and those positions thereof not adopted herein are considered either unnecessary, irrelevant, or unsupported in law or fact.

## ISSUE PRESENTED

1. Whether petitioners are entitled to additional grant funding for 1984-85 under Department of Natural Resources' ("DNR") Aquatic Plant Control Funding Program?

## FINDINGS OF FACT

2. The hearing officer's findings of fact are adopted and incorporated by reference herein.

## CONCLUSIONS OF LAW

3. DNR's Exceptions and Memorandum of Law are adopted and incorporated by reference herein.

4. The hearing officer's Conclusions of Law to which DNR did not take exception are adopted and incorporated by reference herein.

5. Petitioners are not entitled to additional grant funding for 1984-85 under DNR's Aquatic Plant Control Funding Program.

Accordingly it is hereby:

ORDERED that the petition filed herein be and hereby is dismissed.

DATED this 13th day of August, 1985.